OPINION
Appellants, Jack Robertson, Alan Pauley, Lee Wilson and Mark Gordon are homeowners in the Village of Mount Gilead. At the time that appellants built their homes, there was no water service to the subdivision. As a result, appellants secured well permits and installed wells.
In 1996, a branch water line was installed which provided water service to the subdivision. Appellants chose to remain on their wells. On June 16, 1997, the Village passed Ordinance No. 1365 which required all existing homes located within the Village to be connected to the Village's water system.
On November 4, 1997, appellants filed a complaint for declaratory and injunctive relief against appellees, the Village of Mount Gilead, the Mayor and the Village Council. Appellants sought a declaration that Ordinance No. 1365 was unconstitutional. Appellants also sought an order enjoining the Village from enforcing the ordinance.
On February 22, 1999, appellants filed a motion for summary judgment. By journal entry filed October 20, 2000, the trial court denied the motion.
On December 7, 2000, appellees filed a motion for summary judgment. By journal entry filed April 18, 2001, the trial court granted said motion, finding the ordinance was not unconstitutionally retroactive.
Appellants filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I. THE TRIAL COURT OF COMMON PLEAS ERRED IN FINDING THAT MOUNT GILEAD ORDINANCE NO. 1365 DOES NOT VIOLATE THE RETROACTIVITY CLAUSE OF THE OHIO CONSTITUTION.
 II. THE COURT OF COMMON PLEAS ERRED IN FINDING THAT MOUNT GILEAD IS NOT ESTOPPED FROM COMPELLING APPELLANTS TO CONNECT TO ITS WATER SYSTEM.
 I
Appellants claim Ordinance No. 1365 is unconstitutional because it is retroactive legislation as it applies to them, and violates Section 28, Article II of the Ohio Constitution. We disagree.
City ordinances, as do statutes enacted by the Ohio General Assembly, enjoy a strong presumption of constitutionality:
 `An enactment of the General Assembly is presumed to be constitutional, and before a court may declare it unconstitutional it must appear beyond a reasonable doubt that the legislation and constitutional provisions are clearly incompatible.' State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. `A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality.' Id. at 147, 57 O.O. at 137, 128 N.E.2d at 63. `That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution.' Xenia v. Schmidt (1920), 101 Ohio St. 437, 130 N.E. 24, paragraph two of the syllabus; State ex rel. Durbin v. Smith (1921), 102 Ohio St. 591, 600, 133 N.E. 457, 460; Dickman, 164 Ohio St. at 147, 57 O.O. at 137, 128 N.E.2d at 63.
The first question is whether the ordinance is meant to apply retroactively. Although the ordinance does not specifically state its intent, its plain language indicates it applies to all buildings and homes within the village limits except those who do not have access to a water main:
 EXISTING STRUCTURES: All buildings and homes located within the Corporation Limits of the Village of Mount Gilead, Ohio must be connected to the Village water system. This legislation is enacted as a sanitary regulation.
 EXCLUSION — ACCESS: The only exclusion to the mandatory connection rule will be those homes that do not have access to a water main. `Access' is defined as a building or home that is within 200 feet from its foundation to a water main. HOWEVER, ONCE A WATER MAIN IS LOCATED WITHIN 200 FEET OF THE FOUNDATION OF THE HOME OR BUILDING THEN THE EXCLUSION WILL TERMINATE IMMEDIATELY.
* * *
 PHASE — IN PERIOD: A phase-in period is hereby granted for all buildings and homes that have access to a water main but are not connected:
 Buildings and homes erected prior to 1992 will be connected to the Village water system on or before August 1, 2000.
 Buildings and homes erected in 1993 will be connected to the Village water system on or before August 1, 2001.
The next step in the analysis is whether the ordinance is substantive or remedial in nature:
 Analysis of whether a statute is unconstitutionally retroactive in violation of Section 28, Article II of the Ohio Constitution requires an initial determination of whether that statute is substantive or merely remedial. While in some cases the line between substantive and remedial may be difficult to ascertain, these terms, as applied, provide readily distinguishable contours. (Wilfong v. Batdorf [1983], 6 Ohio St.3d 100, 6 OBR 162, 451 N.E.2d 1185, to the extent inconsistent herewith, overruled.)
 Van Fossen v. Babcock Wilcox Company (1988), 36 Ohio St.3d 100, paragraph three of the syllabus.
The Van Fossen court at 106-107 discussed "substantive" statutes as follows:
 With regard to substantive rights, it has been more particularly held that a statute is substantive when it does any of the following: impairs or takes away vested rights, State, ex rel. South Euclid v. Zangerle (1945), 145 Ohio St. 433, 437, 31 O.O. 57, 59, 62 N.E.2d 160, 163; affects an accrued substantive right, In re Nevius (1963), 174 Ohio St. 560, 564, 23 O.O.2d 239, 241, 191 N.E.2d 166, 169-170; imposes new or additional burdens, duties, obligations or liabilities as to a past transaction, Miller v. Hixson (1901), 64 Ohio St. 39, 51, 59 N.E. 749, 752; State v. Cincinnati Tin Japan Co. (1902), 66 Ohio St. 182, 212, 64 N.E. 68, 71; State, ex rel. Szalay v. Zangerle (1940), 137 Ohio St. 195, 198, 17 O.O. 551, 552, 28 N.E.2d 592, 593; creates a new right out of an act which gave no right and imposed no obligation when it occurred, Johnson v. Bentley
(1847), 16 Ohio 97, 99-100; Lewis v. McElvain (1847), 16 Ohio 347, 355; creates a new right, State, ex rel. Crotty, v. Zangerle, supra, 133 Ohio St. at 535, 11 O.O. at 228, 14 N.E.2d at 934; gives rise to or takes away the right to sue or defend actions at law, Smith v. New York Central R.R. Co. (1930), 122 Ohio St. 45, 48, 170 N.E. 637, 638; State, ex rel. Slaughter, v. Indus. Comm. (1937), 132 Ohio St. 537, 543, 8 O.O. 531, 534, 9 N.E.2d 505, 508; Weil v. Taxicabs of Cincinnati, Inc. (1942), 139 Ohio St. 198, 203, 22 O.O. 205, 207, 39 N.E.2d 148, 151.
The Van Fossen court at 107-108 went on to discuss remedial statutes as follows:
 Remedial laws are those affecting only the remedy provided. These include laws which merely substitute a new or more appropriate remedy for the enforcement of an existing right. While we recognize the occasional substantive effect, it is yet generally true that laws which relate to procedures are ordinarily remedial in nature, Wellston Iron Furnace Co. v. Rinehart (1923), 108 Ohio St. 117, 140 N.E. 623, paragraph one of the syllabus, including rules of practice, courses of procedure and methods of review, In re Nevius, supra, 174 Ohio St. at 564, 23 O.O.2d at 241, 191 N.E.2d at 169-170, but not the rights themselves, Weil v. Taxicabs of Cincinnati, Inc., supra. (Footnotes omitted.)
The question sub judice is whether mandatory connection to a water main is substantive legislation. In other words, is the right to remain on a well within a village incorporated area a substantive right? We answer this inquiry in the negative for the following reasons.
Appellants argue their substantive rights have been violated because their homes were built prior to the mandatory hook-up requirement, they were permitted to have wells and in 1994, the Village required homes only within 200 feet of the water main to hook-up.[1]
In 1988, the Village adopted Ordinance No. 901.6 "Compulsory Service Connections" which stated "[w]henever Council deems it necessary, in view of contemplated street paving or as a sanitary regulation, it may require, pursuant to Ohio R.C. 729.06, 743.23 or 743.37, that either sewer, water, or gas connections be installed by the owners of lands abutting such street." This enabling ordinance was in effect prior to appellants' building of their homes or ownership of their properties.
R.C. 729.06 vests a municipal or village legislature with the right to order mandatory hook-ups and states in pertinent part the following:
 Whenever the legislative authority of a municipal corporation deems it necessary, in view of contemplated street paving or as a sanitary regulation, that sewer or water connections or both be installed, the legislative authority shall cause written notice thereof to be given to the owner of each lot or parcel of land to which such connections are to be made, which notice shall state the number and the character of connections required.
 The notice under this section shall be served by the clerk of the legislative authority, or a person designated by such clerk, upon the owners of the lots or parcels of land to which such connections are to be made * * *.
 If said connections are not installed within thirty days from the date of service of such notice, the work may be done by the municipal corporation and the cost thereof together with a forfeiture of five per cent, assessed against the lots and lands for which such connections are made.
The clear statutory language of the cited statute implies that water hook-up legislation is remedial in nature. Stated conversely, the right to remain on a well is not a substantive right. The requirement to hooking up to a water main does not create a new duty on appellants or attach a new disability. Appellants are required to provide sanitary water for their properties. The method per R.C. 729.06 and Ordinance No. 901.6 is controlled by the legislature and not at the discretion of the property owners.
To accept appellants' argument would doom all legislation that carries out the public safety and well being mandates required of villages and cities. Further, under recent analysis by the Supreme Court of Ohio (State v. Cook cited supra), we fail to find the method of sanitary water to be any more substantive than requiring an individual to register as a sexual predator. We also find that the receiving of water is not a substantive right, but is controlled by the mandates of R.C. 729.06 in pursuit of health and safety regulations.
We find this determination to be consistent with decisions from other Court of Appeals in this state. See, Portsmouth v. McGraw (1986),21 Ohio St.3d 117, and Roosevelt Apartments V. Nichols (1983),10 Ohio App.3d 232, wherein our brethren from the Tenth District reviewed the issue of retroactive legislation in the context of incinerators and held the following at 235:
 The regulations pertaining to the operation of incinerators promulgated, pursuant to R.C. 3704.03(G), do not impose new duties and obligations upon the operation of the incinerators in the past. The regulations do restrict the operation of the incinerators in the future so that the environment will not be unreasonably polluted.
We conclude Ordinance No. 1365 is remedial in nature and appellants' rights under Section 28, Article II of the Ohio Constitution have not been violated.
Assignment of Error I is denied.
 II
Appellants argue the Village is estopped from compelling mandatory hook-up because of prior actions. We disagree.
In Ohio State Board of Pharmacy v. Franz (1990), 51 Ohio St.3d 143,145-146, the Supreme Court of Ohio held the following:
 It is well-settled that, as a general rule, the principle of estoppel does not apply against a state or its agencies in the exercise of a governmental function. Sekerak v. Fairhill Mental Health Ctr. (1986), 25 Ohio St.3d 38, 39, 25 OBR 64, 65, 495 N.E.2d 14, 15; see, also, Besl Corp. v. Pub. Util. Comm. (1976), 45 Ohio St.2d 146, 150, 74 O.O.2d 262, 265, 341 N.E.2d 835, 838.
The regulation of water is a governmental function. See, R.C. 2744.01(C).
Assignment of Error II is denied.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Morrow County, Ohio is affirmed.
Hon. Sheila G. Farmer, J. Hon., John W. Wise, J., concur. Hon. William B. Hoffman, P.J., concurs in part and dissents in part.
[1] On September 6, 1994, the Village passed Ordinance No. 1305 which stated "existing houses and houses not within 200' from the foundation to a water line, will not be mandated to connect to the Village's water system." See, Exhibit 3, attached to Complaint. Appellants' homes were within 200 feet of the branch water line when it was installed in 1996.