Pfeifer, J.,
concurring in judgment only.
{¶ 47} I concur in the judgment of the majority but not in the reasoning behind that judgment. As Justice O’Neill states in his dissent, Article II, Section 28 of the Ohio Constitution provides “a restraint on the power of the General Assembly.” Dissenting opinion at ¶ 56. That restraint is a clearly stated, absolute prohibition without limitation. We need not go outside the text of the Ohio Constitution to search for meaning. “Where there is no doubt, no ambiguity, no uncertainty as to the meaning of the language employed by the Constitution makers, there is clearly neither right nor authority for the court to assume to interpret that which needs no interpretation and to construe that which needs no construction.” State v. Rose, 89 Ohio St. 383, 387, 106 N.E. 50 (1914).
{¶ 48} Political subdivisions may successfully sue the state based on violations of the Retroactivity Clause. See, e.g., Hamilton Cty. Commrs. v. Rosche, 50 Ohio St. 103, 112-113, 33 N.E. 408 (1893); see also State ex rel. Crotty v. Zangerle, 133 Ohio St. 532, 534-535, 14 N.E.2d 932 (1938).
{¶ 49} In a recent case, Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision, 91 Ohio St.3d 308, 744 N.E.2d 751 (2001), this court held that an amendment to R.C. 5715.19 that allowed taxpayers to refile previously dismissed challenges to real-property-valuation assessments before county boards of revision “violate[d] Section 28, Article II of the Ohio Constitution, which prohibits the enactment of retroactive legislation.” Id. at paragraph two if the syllabus. This court had held in Sharon Village Ltd. v. Licking Cty. Bd. of Revision, 78 Ohio *370 St.3d 479, 678 N.E.2d 932 (1997), that a valuation complaint filed on behalf of a corporation by a nonattorney was invalid, affirming the board of revision’s dismissal of the corporation’s valuation complaint for lack of jurisdiction. Cincinnati at 310. The General Assembly, through passage of Sub.H.B. No. 694, 147 Ohio Laws, Part III, 5373, set out to ease the effect of that -decision. Among other things, that bill created an exception to the general statutory rule that a real-property taxpayer is, in the absence of a showing of a change in circumstances, prohibited from filing successive valuation complaints in the same three-year period. Id. at 5374-5375. The amendment essentially allowed taxpayers adversely affected by the Sharon Village decision a “do-over” to refile their complaint, exempting them from the three-year rule.
{¶ 50} This court held that the General Assembly could relax the three-year rule but- could not do so retroactively because of the effect of a retroactive application on political subdivisions:
The county officials who opposed reduction in assessed valuations when the first complaints were dismissed could have concluded that those dismissals, followed by exhaustion of judicial review, ended the valuation proceedings and established the value of the property for the triennium period; thereby creating a “reasonable expectation of finality.” Cf. State ex rel. Matz v. Brown (1988), 37 Ohio St.3d 279, 281, 525 N.E.2d 805, 808. But Sub.H.B. No. 694 imposes on those officials a burden to again defend the value determined by the auditor and, potentially, to refund taxes if the complainant is successful. Under Bielat [v. Bielat, 87 Ohio St.3d 350, 721 N.E.2d 28 (2000),] and Grotty, Sub.H.B. No. 694 is unconstitutionally retroactive because it creates a new right while, at the same time, imposing a new burden on parties who had appeared in opposition to the merits of once-dismissed valuation complaints or countercomplaints.
Id. at 316-317.
{¶ 51} Despite the fact that this court held in Cincinnati that Sub.H.B. No. 694 was unconstitutionally retroactive, the majority states that the holding “lack[s] precedential value” because it employs “an assumption that the protection afforded by the Retroactivity Clause is available to political subdivisions, and the analysis is solely devoted to whether the law in question is retroactive.” Majority opinion at ¶ 39. How could this court find in Cincinnati that Sub.H.B. No. 694 was unconstitutionally retroactive because it imposed a new burden on political subdivisions without the implicit holding that the protection provided by Article II, Section 28 is available to political subdivisions? Certainly, nothing in the plain language of the Ohio Constitution would have suggested otherwise to the court in *371 Cincinnati Further, none of this court’s precedents cited by the majority comes close to establishing a categorical denial of the protections of the Retroactivity Clause for political subdivisions.
{¶ 52} Nonetheless, I would hold that the Retroactivity Clause does not apply in this case. The school districts in this case had no vested right or reasonable expectation of finality in the Ohio Department of Education’s (“ODE’s”) treatment of funds that were as yet undistributed. The ODE was not powerless to dispute enrollment figures submitted by the districts and to adjust the funds to be distributed.
{¶ 53} The nuclear option imposed by the majority is not necessary to reach a conclusion in favor of the state in this case. We need only determine whether the particular measures passed by the General Assembly “impair[ed] vested rights, affect[ed] an accrued substantive right, or impose[d] new or additional burdens, duties, obligations or liabilities as to a past transaction.” Bielat, 87 Ohio St.3d at 354, 721 N.E.2d 28. Instead, the majority eliminates even the possibility that the General Assembly could ever pass legislation that is unconstitutionally retroactive as to political subdivisions. The majority thus removes an important check on the power of the General Assembly. This court — not our Constitution — has given the clear green light to the General Assembly to assert a power it had no reason to believe it had until today.